IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 1:18-CV-927 |
| v. | ) | 1:00-CR-200 |
| | ) | |
| KELBY DEVONTA BENJAMIN, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, District Judge.

From 1996 to early 2000, the defendant Kelby Benjamin was involved in selling large amounts of crack and powder cocaine. Pursuant to a bill of information, Doc. 1, he pled guilty to one count of conspiracy to distribute cocaine hydrochloride (powder) and in excess of 50 grams of cocaine base (crack). The longer statutory penalty for the crack cocaine offense applied, with a statutory minimum of ten years. The guideline range was 360 months to life, and the Court sentenced Mr. Benjamin to 360 months in prison.

Since then, Mr. Benjamin has been before the Court at least five times: for sentencing after appeal; for resentencing following the Supreme Court decision in *United States v. Booker*, 543 U.S. 220 (2005), when the Court considered the guidelines on an advisory basis and imposed the same 360-month sentence; on three unsuccessful § 3582(c)(2) motions for a sentence reduction based on retroactive changes to the sentencing guidelines; and once on a letter motion asking that his conviction be evaluated

in light of *United States v. Simmons*, 649 F.3d 237 (4th Cir. 2011). The drug amount for which he was accountable has been a centerpiece of all but one of these requests.

Pending now are Mr. Benjamin's second § 2255 motion, Doc. 123, and his motion for a sentence reduction pursuant to the First Step Act, Doc. 130, along with a couple of related motions to amend. Docs. 125, Doc. 145. Both substantive motions revolve around drug amounts.

His § 2255 motion will be denied. It is outside the statute of limitations, and no exception applies.

Mr. Benjamin is eligible for a sentence reduction under the First Step Act. The Court has considered the complete record and the arguments of counsel. The Court will grant the motion and reduce Mr. Benjamin's sentence to 312 months.

### HISTORY OF THE CASE AND CHANGES TO SENTENCING LAW

A full recap of the history of Mr. Benjamin's travels through the federal court system would take many pages. A selective chronology is appended to this opinion, with docket citations, for reference. The most relevant history is recited here.

#### The Guilty Plea and 2004 Sentencing

From 1996 to early 2000, Mr. Benjamin was involved in selling large amounts of crack and powder cocaine in and around Norwood, North Carolina. *See* Doc. 113 at ¶ 1. Pursuant to a bill of information, Doc. 1, he pled guilty on August 7, 2000, to one count of conspiracy, with two objects: 1) to distribute cocaine hydrochloride, commonly known as "powder," and 2) to distribute in excess of 50 grams of cocaine base,

commonly known as "crack," in violation of 21 U.S.C § 846 (conspiracy), § 841(a)(1) (distribution), and § 841(b)(1)(A) (penalties with drug amounts). *See* Doc. 6.

Drug offenses, then and now, carry mandatory minimum sentences when certain amounts are proven beyond a reasonable doubt or when a defendant pleads guilty to the amount. *See generally* 21 U.S.C. § 841; *United States v. Hardnett*, No. 3:03cr212, 2019 WL 5445887, at *4–11 (E.D. Va. Oct. 24, 2019). At the time of Mr. Benjamin's offense, a defendant convicted of conspiracy to distribute in excess of 50 grams of crack cocaine faced a ten-year mandatory minimum sentence, with a maximum sentence of life in prison, upon conviction. 21 U.S.C. § 841(b)(1)(A) (Feb. 18, 2000).

In calculating the guideline range, the pre-sentence report suggested that Mr. Benjamin was accountable for at least 2.66 kilograms of crack cocaine and 108 kilograms of powder cocaine. Doc. 113 at ¶ 20. At the time, the Guidelines said that a defendant who was accountable for more than 1.5 kilograms of crack cocaine was assessed a base offense level of 38. U.S. SENTENCING GUIDELINES MANUAL § 2D1.1(c) (U.S. SENTENCING COMM'N 1998). Larger amounts did not increase the base offense level, and, consistent with this guideline, the pre-sentence report suggested a base offense level of 38. Doc. 113 at ¶ 20.

Mr. Benjamin objected to the drug amounts used to calculate his guidelines. Doc. 46 at 48. At his sentencing hearing, the Government offered testimony from a co-defendant. The co-defendant testified that he and Mr. Benjamin bought powder cocaine from a Mexican source, Doc. 46 at 54–55; that they bought small amounts of 1–2 ounces every week for a year and a half and cooked it all into crack, *id.* at 56–57; that later, they

3

began buying half kilograms of powder and converting 10 ounces of each half kilogram (which is roughly 18 ounces) into crack, *id.* at 58–59; that they did this every week from late 1998 through May 2000, *id.* at 62–63; and that they sold the remaining powder cocaine in its original powder form. *Id.* at 64–65.

Mr. Benjamin testified. He denied he had been involved in converting any powder cocaine to crack, Doc. 46 at 86, but admitted distributing some 38 kilograms of cocaine powder, *see id.* at 90–92, 100, a drug amount that would result in a base level of 34. U.S.S.G. § 2D1.1(c) (Nov. 1, 1998)[1]; *see United States v. Benjamin*, 153 F. App'x 905, 907 (4th Cir. 2005). He also admitted he obtained and sold a gram of crack each week during the end of 1997 and early 1998, but he denied he sold crack thereafter. Doc. 46 at 88. His testimony was inconsistent with his guilty plea to conspiracy to distribute in excess of 50 grams of crack and inconsistent with statements Mr. Benjamin made to law enforcement during debriefing. Doc. 46 at 92–93.

After hearing the evidence at the sentencing hearing, the Court found that based on the credible testimony of a co-defendant, Mr. Benjamin was accountable for "in excess of 1.5 kilograms of cocaine base, crack," Doc. 46 at 110, 115, and found a base offense level of 38. The Court made no explicit findings during the hearing as to the total specific amount of crack cocaine for which Mr. Benjamin was accountable nor as to whether Mr. Benjamin was accountable for any amount of powder cocaine, apparently because any additional amount of crack or powder would not have increased the base

---

[1] The 1998 version of the Guidelines was in effect in 2004 when Mr. Benjamin was sentenced and was the version used by the sentencing court. Doc. 46 at 51.

offense level, *see* U.S.S.G. §§ 2D1.1(c), 2D1.1(a)(2) (Nov. 1, 1998) (establishing highest base offense level for drug crimes as 38, absent other facts not present here).  The Statement of Reasons indicates that the pre-sentence report was adopted with no change relevant to the drug amount or base offense level.  Doc. 159.

The sentencing court also decided that two enhancements were appropriate.  Doc. 46 at 111, 113; *see* Doc. 113 at ¶¶ 26, 27 (adding two levels for being the "organizer, leader, manager, or supervisor of a criminal activity" and two levels "for obstructing or impeding the administration of justice" by absconding and failing to appear for sentencing).  The Court rejected the proposed two-level enhancement for possession of a firearm in connection with the charged offense.  Doc. 46 at 110; *see* Doc. 113 at ¶ 24. Finally, the Court agreed with the pre-sentence report that Mr. Benjamin was not entitled to a reduction for acceptance of responsibility, as he had absconded while awaiting sentencing.  Doc. 46 at 111–12; *see* Doc. 113 at ¶ 30.

Based on the base offense level of 38 and with the two enhancements, the Court found that Mr. Benjamin's total offense level was 42, his criminal history was Level III, and his guideline range was 360 months to life.  Doc. 46 at 113.  The guidelines were mandatory at the time, and the Court sentenced Mr. Benjamin at the bottom of that guideline range to a term of imprisonment of 360 months.  *Id.*; Doc. 41 at 2.

### The First Appeal

As a result of the decision in *United States v. Booker*, Mr. Benjamin's sentence was vacated on appeal.  *See Benjamin*, 153 F. App'x at 906.  The Fourth Circuit also

noted a concern about the drug amount calculation and found it should be recalculated on remand. *Id.* at 908.[2]

**The 2006 Resentencing**

During the resentencing hearing, defense counsel specifically addressed how the drug amount was calculated. Doc. 69 at 6, 10–11. He also addressed the powder/crack discrepancy in the guidelines as part of a request for a variance. *Id.* at 10–11.

The resentencing court made the same guideline calculation, and it again adopted the pre-sentence report with no change as to drug amount or base offense level. Doc. 110. The Court stated:

> With respect to the quantity determination, the Court as well had sufficient facts before it at the time of the original sentence in this case to determine that the defendant should have attributed to him more than 1.5 kilograms of cocaine base, crack, based upon the defendant's own admission of the level at which he himself

---

[2]As to drug amount, the Fourth Circuit stated in full:

> Benjamin contends that the district court violated the Sixth Amendment under *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), when it assigned base level 38 based upon the judge-determined fact of the amount of drugs for which he was accountable and increased the offense level based upon his role in the offense and obstruction of justice. Our review is for plain error. *See United States v. Harp,* 406 F.3d 242, 247 (4th Cir. 2005).
> Using only the amount of drugs for which Benjamin admitted responsibility, Benjamin's offense level would be 34. *See* USSG § 2D1.1(c)(3). Based on offense level 34 and criminal history category III, Benjamin's guideline range would have been 188-235 months' imprisonment. Because Benjamin's 360-month sentence exceeds the maximum authorized by the facts he admitted, we conclude that the district court committed plain error in sentencing Benjamin and that the error requires resentencing. *See United States v. Evans,* 416 F.3d 298, 300 n. 4 (4th Cir.2005); *United States v. Hughes,* 401 F.3d 540, 547 (4th Cir.2005).

*Benjamin*, 153 F. App'x at 907–08. In *Hughes*, the defendant did not plead guilty and went to trial, unlike Mr. Benjamin who admitted that he had conspired to distribute at least 50 grams of crack cocaine when he pled guilty. In any event, the Court's decision as to drug amount made at the resentencing hearing was affirmed on appeal. Doc. 71.

> was dealing in cocaine or cocaine base, crack, and other evidence presented by the Government at the time. The Court will renew and adopt its previous findings with respect to the quantity and find the Defendant did, in fact, have responsibility for more than 1.5 kilograms of cocaine base, crack.

Doc. 69 at 20. The Court found the same base offense level of 38, added the same two enhancements for a total offense level of 42, found the same guideline range, and, after hearing from counsel, determined in its discretion that a bottom-of-the-guideline sentence of 360 months was appropriate. *See* Doc. 69 at 20–21, 28. The Fourth Circuit affirmed on appeal. Doc. 71.

### The 2007 Retroactive Amendments

In 2007, the Sentencing Commission changed the drug amount guideline provisions to reduce the disparity in the way crack and powder cocaine are treated,[3] and it made those changes retroactive. *United States v. Dunphy*, 551 F.3d 247, 249 (4th Cir. 2009). Amendments 706 and 711 "raised the minimum crack cocaine quantity necessary to justify a base offense level of 38 from 1.5 to 4.5 kilograms." *United States v. Mann*, 709 F.3d 301, 304 (4th Cir. 2013). In 2010, Mr. Benjamin sought a sentence reduction based on the 2007 Amendments, pursuant to 18 U.S.C. § 3582(c)(2). Doc. 73.

The Government and appointed counsel acknowledged that Mr. Benjamin's advisory guideline range did not change as a result of the 2007 Amendments. Docs. 76, 77. The Court agreed. Doc. 79. The Court used a base offense level of 36, Doc. 79, which was appropriate under Amendment 706 for more than 1.5 kilograms but less than

---

[3] *See generally United States v. Faucett*, 543 F. Supp. 2d 549, 550–51 (S.D. W. Va. 2008), *aff'd,* 459 F. App'x 246 (4th Cir. 2011); U.S.S.G. supp. app. C, amend. 706 (Nov. 1, 2007).

4.5 kilograms of crack. *See* U.S.S.G. supp. to app. C, amend. 706, 713 (Nov. 1, 2008);

*United States v. Fenwick*, No. CRIM. PJM 03-0484, 2011 WL 1630281, at *1 n.2 (D.

Md. Apr. 29, 2011). With enhancements, he had a total offense level of 40. Doc. 79.

His Criminal History level did not change from level III. *Id.* His guideline range

remained 360 months to life. *Id.*

Therefore, the Court denied Mr. Benjamin's motion to reduce his sentence, since

the retroactive amendments did "not have the effect of lowering the guideline range," and

Mr. Benjamin therefore was not eligible for a sentence reduction.[4] Doc. 79. Mr.

Benjamin appealed, Doc. 80, but his appeal was dismissed by the Fourth Circuit for

failure to prosecute. Order of dismissal, *United States v. Benjamin*, No. 11-630 (1:00-cr-

200-JAB-1), Doc. 9 (4th Cir. July 6, 2011); Doc. 85.

### The Fair Sentencing Act

In 2010, Congress passed the Fair Sentencing Act. Pub. L. No. 111-220, 124 Stat.

2372. Among other things, the Act reduced the mandatory minimum sentence for

conspiracy to possess 50 grams or more of cocaine base (crack) from ten years to five

years. *See id.* at sec. 2(a); 21 U.S.C. §§ 841, 846. The Act applied only to crimes

---

[4] In *United States v. Dunphy*, the Fourth Circuit held that district courts re-sentencing defendants pursuant to the 2007 Amendments lack authority to impose a new sentence that is less than the minimum of the amended guideline range. 551 F.3d at 257. Specifically, the Fourth Circuit held that proceedings under 18 U.S.C. § 3582(c)(2) "do not constitute a full resentencing of the defendant," and that "§ 3582(c)(2) and U.S.S.G. § 1B1.10 are narrow provisions that allow a limited reduction of sentence by the amount specified in an amendment . . . ." *Id.* at 251–52.

committed on or after its effective date, and this statutory change did not affect Mr.

Benjamin. *See United States v. Bullard*, 645 F.3d 237, 249 (4th Cir. 2011).

## The 2011 Retroactive Amendment

In 2011, the Sentencing Commission again amended its relevant guidelines as to

drug amounts and authorized retroactive application of the new guidelines.[5]

"Amendment 750 increased the minimum quantity of cocaine base necessary to trigger

the maximum base offense level [of 38] from 4.5 to 8.4 kilograms." *United States v.*

*Peters*, 843 F.3d 572, 575 (4th Cir. 2016) (citing U.S.S.G. app. C vol. III, amend. 750

(Nov. 1, 2011)). Between 2.8 and 8.4 kilograms were required for a base offense level of

36, and between 840 grams and 2.8 kilograms were required for a base offense level of

34. U.S.S.G. app. C vol. III, amend. 750 (Nov. 1, 2011).

Mr. Benjamin again sought a sentence reduction. Doc. 86. Appointed counsel

again conceded that the defendant did not qualify for a sentence reduction. Doc. 91.

The Court found that under Amendment 750, Mr. Benjamin's base offense level "is still

level 38, his total offense level is still level 42, and his Guideline range is still 360

months to life." Doc. 92. The Court denied Mr. Benjamin's motion to reduce sentence

because Mr. Benjamin was not eligible. *Id.* The Fourth Circuit affirmed. Doc. 103.

As best the Court can tell, it appears that everyone evaluating this second

§ 3582(c)(2) motion, Doc. 86, was working from the Statement of Reasons signed after

---

[5] As with the 2007 Amendment, the purpose was to partially alleviate the crack/powder disparity. *See Bullard,* 645 F.3d at 245 n. 4.

the 2006 resentencing.  *See* Doc. 110.  That Statement of Reasons, like the one entered in 2004 after the original sentencing, adopted the pre-sentence report without change as to specific drug amounts, Doc. 110 at 1, which were referenced in the report as 2.6611 kilograms of crack and 108.0103 kilograms of powder.  Doc. 113 at ¶ 20.  Neither Statement of Reasons included or referenced the Court's less specific finding made at the sentencing or resentencing hearings that the defendant was accountable for "at least" 1.5 kg of crack.[6]  *See* Doc. 46 at 110; Doc. 69 at 20; Doc. 110 (2006 SOR); Doc. 159 (2004 SOR).  Nor did anyone reference or mention the Court's earlier ruling based on the 2007 Amendment that the base offense level was 36.  *Compare* Doc. 92 *with* Doc. 79.

### The 2014 Retroactive Amendment

The Sentencing Commission again retroactively amended the guidelines in 2014.[7] *United States v. Williams*, 808 F.3d 253, 263 (4th Cir. 2015).  Amendment 782 raised the requisite amount of cocaine base required to trigger the maximum base offense level of 38 from 8.4 kilograms to 25.2 kilograms. U.S.S.G. supp. app. C vol. III, amend. 782 (Nov. 1, 2014).  Mr. Benjamin again sought a sentence reduction, Doc. 106, and counsel was appointed.  Doc. 108.  As with the previous § 3582(c)(2) motion related to the 2011 Amendments, everyone worked from the 2006 Statement of Reasons.  *See* Doc. 110.  For

---

[6] Had only the 1.5 kilogram amount been used, the base offense level would have been 34, the total offense level would have been 38, and with a criminal history category III, his guideline range would have been 292 months to 365 months.  *See* U.S.S.G. app. C vol. III, amend. 750 (Nov. 1, 2011).

[7] This was another effort to further alleviate some of the sentencing disparity between crack and powder cocaine.  *See United States v. Peters*, 843 F.3d 572, 575 (4th Cir. 2016).

the same reasons it gave in denying the previous motion, the Court[8] denied this motion, Doc. 112, and this decision was affirmed. Doc. 120.[9]

## THE PENDING MOTIONS

### I.     The § 2255 Motion to Vacate

Mr. Benjamin filed the pending motion to vacate pursuant to 28 U.S.C. § 2255 on November 5, 2018, alleging his sentence exceeds the statutory maximum, that the Government failed to treat the specific drug quantity as an element of his offense, and ineffective assistance of counsel. Doc. 123. The Government filed a motion to dismiss, contending that petitioner's motion is untimely. Doc. 138 at 4. Because Mr. Benjamin's § 2255 motion is not timely, the Government's motion will be granted.

Petitions for collateral relief under § 2255 are subject to a one-year statute of limitations. *See* 28 U.S.C. § 2255(f). The one-year clock is triggered by one of four conditions, whichever occurs latest:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

---

[8] By this time, the sentencing judge had taken senior status and the undersigned was assigned Mr. Benjamin's case.

[9] Had only the 1.5 kilogram amount been used, the base offense level would have been 32. *See* U.S.S.G. § 2D1.1(c)(4) (Nov. 1, 2014) (setting a base offense level of 32 for offenses involving at least 840 grams but less than 2.8 kilograms of cocaine base). The total offense level would have been 36, and with a criminal history category III, his guideline range would have been 235 to 293 months. *See* U.S.S.G. Sentencing Table (Nov. 1, 2014).

> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

*Id.*; *see also Whiteside v. United States*, 775 F.3d 180, 182–83 (4th Cir. 2014). Mr. Benjamin advances two grounds to excuse the untimeliness of his motion.

First, Mr. Benjamin contends he did not discover that he was "being held accountable for drug amounts not initially found by the sentencing court" until he filed his third § 3582(c) motion seeking a reduction of sentence. Doc. 123 at 10; *see* Doc. 106. To the extent Mr. Benjamin argues this warrants an excuse pursuant to § 2255(f)(4), this contention is not supported by the record.

The drug quantities that supported Mr. Benjamin's guilty plea were explicitly listed in his pre-sentence report. Doc. 113 at ¶ 20 ("**2.661 kilograms of cocaine base** . . . [and] **108.0103 kilograms of cocaine hydrochloride**") (emphasis in original). They were also discussed at Mr. Benjamin's first sentencing hearing, where the government presented evidence of significantly larger quantities than the 50 grams referenced in the information and in his plea agreement, *see* Doc. 46 at 78–84, and again at his resentencing hearing. Doc. 69 at 14–20. Mr. Benjamin was present during both of these proceedings and heard the arguments of counsel, the evidence presented, and the Court's determination on the quantity of drugs involved. He also disputed these quantities, as noted *supra*, at both sentencing hearings. Finally, Mr. Benjamin cited the quantities in his own motion "Opposing The U.S. Probation Office's Opposition" executed on June

26, 2016, Doc. 114 at 3–4, which was more than a year before the current § 2255 petition was filed. The record directly contradicts Mr. Benjamin's contention that he did not discover the facts underlying his § 2255 motion until November 3, 2017, and his motion is not timely based on "undiscovered" facts. *See* § 2255(f)(4).

In his second argument, which is not clearly articulated, Mr. Benjamin contends that judgment from the Fourth Circuit as to his appeal from the denial of his November 9, 2015, § 3582(c) motion became final on November 3, 2017.[10] *See* Doc. 123 at 10. The implication is that this judgment extends the statute of limitations to November 3, 2018 pursuant to § 2255(f)(1). However, the denial of a § 3582(c) motion does not re-start the clock for a § 2255 motion, nor does it excuse the untimely filing of the present § 2255 motion under § 2255(f)(1). *See United States v. Sanders*, 247 F.3d 139, 143 (4th Cir. 2001) (noting that "[t]he plain language of 18 U.S.C. § 3582(b) establishes that a modification of a sentence does not affect the finality of a criminal judgment").

Section 2255(f)(1) provides that the one-year period to bring a § 2255 motion begins when "the judgment of conviction becomes final[.]" A judgment of conviction that contains a sentence of imprisonment is final, "[n]otwithstanding the fact that a sentence can subsequently be" modified. 18 U.S.C. § 3582(b). As judgment in Mr.

---

[10] "When reviewing a pro se complaint, federal courts should examine carefully the plaintiff's factual allegations, no matter how inartfully pleaded, to determine whether they could provide a basis for relief." *Armstrong v. Rolm A. Siemans Co.*, 129 F.3d 1258 (table), 1997 WL 705376, at *1 (4th Cir. 1997) (citations omitted).

Benjamin's case was entered in May 2006 and affirmed in May 2007, his conviction became final in mid-August 2007.[11]

Mr. Benjamin has also filed two papers in connection with his § 2255 motion which he labels as motions to amend. *See* Doc. 125 ("Motion to Amend . . . the Memorandum of Law in Support or 28 U.S.C. 2255 Proceedings"); Doc. 145 ("Motion to Amend Petitioner's Response to Motion"). Neither actually requests relief from the Court, but both read more as supplemental briefs to his § 2255 motion and his response to the Government's motion to dismiss, respectively. To the extent these are motions to supplement his briefs which he wishes the Court to consider, they are granted. However, neither motion addresses the untimeliness of Mr. Benjamin's § 2255 motion or raises any other issues which would overcome the timeliness bar. They, therefore, do not alter the Court's ultimate conclusion about Mr. Benjamin's motion.

The Government's motion to dismiss Mr. Benjamin's motion to vacate, set aside, or reduce sentence, Doc. 138, is granted.

## II.    The First Step Act Motion

### A. Eligibility

In 2018, Congress gave courts the authority to reduce the sentences of eligible defendants convicted of covered offenses and sentenced before the Fair Sentencing Act, "as if sections 2 and 3 of the Fair Sentencing Act of 2010 were in effect at the time the

---

[11] The amended judgment was entered on May 10, 2006. Doc. 60. The judgment was affirmed by the Fourth Circuit on May 14, 2007. Doc. 72. Mr. Benjamin had ninety days to file a petition for a writ of certiorari in the Supreme Court. He did not, and the conviction therefore became final. *See Clay v. United States*, 537 U.S. 522, 527 (2003).

covered offense was committed." First Step Act of 2018, sec. 404(b), Pub. L. 115-391, 132 Stat. 5194. The violation of a criminal statute whose statutory penalties were revised by the FSA is a "covered offense," and a defendant previously convicted of such a "covered offense" is eligible to seek a sentence reduction. *See id.* sec. 404(a); *United States v. Robinson*, No. PJM 02-0227, 2019 WL 3867042, at *2 (D. Md. Aug. 15, 2019).

Under the Fair Sentencing Act, the statutory minimum for a drug conspiracy involving 50 grams or more of cocaine base, crack, is 5 years and the statutory maximum is 40 years, not the 10 years to life in place when Mr. Benjamin committed the crime. *See* Fair Sentencing Act of 2010, sec. 2, Pub. L. No. 111-220, 124 Stat. 2372; 21 U.S.C. §§ 841(b)(1)(A)(iii), (b)(1)(B)(iii). Thus, the statutory minimum and maximum for Mr. Benjamin's crime were revised by the Fair Sentencing Act, and Mr. Benjamin is eligible for a sentence reduction under the First Step Act.

Unlike the retroactive amendments to the sentencing guidelines discussed *supra* that are evaluated under § 3582(c)(2), First Step Act motions are based on the statutory authority provided in § 404 of the Act and are evaluated under § 3582(c)(1)(B). *See, e.g.*, *Robinson*, 2019 WL 3867042, at *3–5. Thus, such motions are not subject to the eligibility requirement in 18 U.S.C. § 3582(c)(2) that the defendant have been "sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission." *See Robinson¸* 2019 WL 3867042, at *4. If the court determines that the statutory penalty has changed, the defendant is eligible for a sentence reduction under the First Step Act, and the sentence can be reduced even if the defendant's guideline range has not changed. *See, e.g.*, *Robinson*, 2019 WL 3867042, at

*2–4 (collecting cases); *United States v. Williams,* No. CR 3:02-548-03-CMC, 2019 WL 3251520, at *3 (D.S.C. July 19, 2019) (collecting cases).

## B. Process and Evidence

Just because a defendant is eligible for a sentence reduction under the First Step Act does not mean he is entitled to such a reduction. *United States v. Pierre*, 372 F. Supp. 3d 17, 22 (D.R.I. 2019) (noting that "relief under the [First Step] Act is ultimately within the discretion of the Court; there is no automatic reduction"). In deciding whether and to what extent a sentence reduction is appropriate, courts consider the new statutory range, the applicable advisory guideline range, the § 3553(a) factors, views of counsel, and any evidence of post-sentence rehabilitation. *See, e.g.*, *United States v. Martin*, No. 1:05CR21, 2019 WL 4862055, at *3 (N.D. W. Va. Oct. 2, 2019); *United States v. Shelton*, No. 3:07-329 (CMC), 2019 WL 1598921, at *3 (D.S.C. Apr. 15, 2019).[12]

The facts established in the pre-sentence report are important, *United States v. Stanback*, 377 F. Supp. 3d 618, 626 (W.D. Va. 2019), as they allow the Court to evaluate the nature and circumstances of the offense and the defendant's history and characteristics, including a defendant's criminal record. 18 U.S.C. § 3553(a)(1). In drug cases like this one, the underlying drug quantity is one of the relevant factors. *Pierre*, 372 F. Supp. 3d at 23 (noting the sentencing court "determine[s] whether a specific

---

[12] A full resentencing hearing is not necessary. *United States v. Stone*, No. 3:04-cr-00142, 2019 WL 4259455, at *7 (M.D. Tenn. Sept. 6, 2019) (collecting cases); *accord Williams*, 2019 WL 3251520, at *3.

defendant is entitled to relief given several factors, including the underlying drug quantity").

## C. Evaluation

### 1. The Guidelines

In Mr. Benjamin's case, the drug amount for which he is accountable has always been the driving force behind his guideline range. It is undisputed that Mr. Benjamin is accountable for at least 1.5 kilograms of crack cocaine, which by itself would result in a guideline range of 235 to 293 months.[13] This result, however, would not take into account the evidence from the co-defendant, which the sentencing judge found to be credible, that Mr. Benjamin was involved in buying and selling substantially larger amounts of both crack and powder cocaine, Doc. 46 at 54–65, or Mr. Benjamin's own admissions about his drug activity. Doc. 46 at 90–92.

Defense counsel suggests using the 1.5 kilogram amount of crack found by the sentencing court, plus 17 kilograms of powder cocaine Mr. Benjamin admitted distributing, with the result that his base offense level is 34, his total offense level is 38, and his guideline range is 292 to 365 months. Doc. 157 at 2–3. If one were to use the testimony of the co-defendant to determine the drug amount, it would come to approximately 9 kilograms of crack and 6.5 kilograms of powder, which would result in a base offense level of 36, a total offense level of 40, and a guideline range of 360 to 480

---

[13] As noted *supra* at 11 note 9, after the 2014 Amendments Mr. Benjamin's guideline range would be 235 to 293 months. *See* U.S.S.G. SENTENCING TABLE (Nov. 1, 2014).

months.  The probation office has suggested using the amounts in the pre-sentence report, 2.6 kilograms of crack and 108 kilograms of powder, which also result in a guideline range of 360 to 480 months, Doc. 137 at 1, a calculation to which the government "does not object."  Doc. 154 at 2.

There is some guidance for how to deal with conflicting and incomplete records as to drug amounts in the context of retroactive sentencing guidelines.  In *United States v. Peters*, a case dealing with a § 3582(c)(2) motion after the 2014 Amendments, the Fourth Circuit noted that when a sentencing court originally attributed a range of quantities to a defendant, the court "may need to identify the attributable drug quantity with more precision to compare it against the new quantity threshold" in order to decide the motion. 843 F.3d 572, 578 (4th Cir. 2016).  Any such additional findings must be "supported by the record and consistent with earlier findings."  *Id.* at 577.

These cases are not directly on point, because eligibility for a sentence reduction under the First Step Act motion does not depend on a lower guideline range, as it does for a § 3582(c)(2) motion.  Nonetheless, the Court assumes the guidelines should play their usual important but advisory role, and *Peters* does support the proposition that the Court has the discretionary authority to make additional *post hoc* findings necessary to calculate the guideline range, when justice so requires.

It is, however, difficult to comply with the guidance in *Peters* that any such additional findings should be "consistent with earlier findings," *Peters*, 843 F.3d at 577, since the finding of a base offense level of 36 made in connection with the 2007

Amendments, *see* Doc. 79, is inconsistent with later findings of a base offense level of 38 made in connection with the 2011 and 2014 Amendments. *See* Doc. 92; Doc. 112.[14]

Upon consideration and study of the entire record, the Court finds it appropriate to adopt defense counsel's suggestion and find Mr. Benjamin accountable for 1.5 kilograms of crack and 17 kilograms of powder.[15] Mr. Benjamin pled guilty to conspiracy to distribute both crack and powder, and it is appropriate to consider both forms of cocaine in determining drug amount. The sentencing judge specifically rejected Mr. Benjamin's testimony that he was not involved in distributing crack when the Court made its initial findings holding him accountable for crack "in excess of 1.5 kilograms," Doc. 46 at 115, and in the absence of a more specific finding at sentencing, the court will use this amount as to crack. In 2004 and 2006, there was no need to make specific findings about the amount of powder cocaine, as it would not have affected the guideline calculation, so the Court does not find that absence of factfinding determinative, especially since Mr. Benjamin admitted his involvement with this amount of powder cocaine in his testimony, and the co-defendant, whom the sentencing court found to be credible, confirmed Mr. Benjamin's distribution of powder cocaine. It would be disconnected from reality to ignore his involvement with powder cocaine in determining his guideline range.

---

[14] It is possible that the use of 36 as the base offense level can be considered as dicta, since the guideline range would have been the same had a base offense level of 38 been used.

[15] In determining amounts of drugs for sentencing purposes, the court is not required to make "precise calculations," especially when no drugs are seized; the court may instead "'approximate' the quantity to be used for sentencing." *United States v. Uwaeme*, 975 F.2d 1016, 1019 (4th Cir. 1992) (citing U.S.S.G. § 2D1.4 cmt. n.2).

Based on these facts, his base offense level is 34, his total offense level is 38, and his guideline range is 292 to 365 months. The supervised release range is four to five years.

## 2. The 3553(a) Factors

Under any view of the evidence and evaluation of drug amounts, Mr. Benjamin was a large-scale drug dealer. He imported substantial amounts of powder cocaine into his community for over two years and sold it there. He was responsible for the conversion of powder cocaine into crack cocaine, a highly addictive and destructive drug. He involved several others in his illegal operations, which he organized and led. This is a very serious offense. The need to punish and deter is significant.

That said, thirty-year sentences are quite rare in this district now, even for defendants involved at the same high level of drug-dealing as Mr. Benjamin. Congress intended the First Step Act to allow courts an opportunity to even the field, to a degree, between persons sentenced before enactment of the Fair Sentencing Act and persons sentenced afterward, and it is appropriate to consider the goal of reducing these disparities when evaluating a First Step Act motion. *See United States v. Rose*, 379 F. Supp. 3d 223, 229 (S.D.N.Y. 2019).

At the time of his illegal activities, Mr. Benjamin was approximately 20 years old. He had one conviction for driving while impaired and was on probation during the time of his drug activities. Doc. 113 at ¶ 33. After his guilty plea, he was released on conditions, but he failed to appear for his sentencing hearing. *Id.* at ¶ 3. While he was a fugitive, he was arrested in California and convicted of felony possession of marijuana

for sale. *Id.* at ¶ 34. While not the most extensive criminal record, it is concerning that he absconded after pleading guilty and before sentencing and that he engaged in more illegal drug activity after he absconded.

### 3. Post-Conviction Mitigating Factors

Mr. Benjamin appears to have done well during his first decade of confinement, with no reported disciplinary actions in prison. *See* Doc. 137. He has also completed a substantial number of educational courses. *Id.* at 3. Since 2015, however, he has had a number of infractions serious enough to result in the loss of privileges. *Id.* at 2.

### 4. Conclusion

Thirty years is a long time. Mr. Benjamin was twenty when he was involved in the drug trade and not much older when he absconded after pleading guilty. He has completed many educational courses while in prison, and he did not have a bad record before he was arrested. Balanced against this are the large scale of his drug business, his obstruction of justice by fleeing before he was sentenced, his involvement in new drug crimes while a fugitive, and his recent spate of disciplinary actions in prison. Weighing these things against each other, and in light of the underlying purposes of the First Step Act, the Court concludes that a sentence reduction to the low-middle of the revised guideline range is appropriate. The Court will reduce his sentence by four years to 312 months imprisonment.

This is also the sentence the Court would impose if the lower guideline range of 235 to 293 months, based only on the amount of crack and disregarding any amount of powder, were used, or if the higher guideline range of 360 to 480 months, based on the

credible testimony of the co-defendant, were used. A sentence of 293 months or lower would not give adequate weight to the seriousness of the offense. A sentence of 360 months does not give fair consideration to the changes in sentencing laws and practices since 2004, especially for someone of his age at the time of the offense, or to Mr. Benjamin's overall positive trajectory while in custody. The Court has imposed a sentence that in its judgment is sufficient but not greater than necessary to meet the sentencing goals of § 3553(a).

It is **ORDERED** that:

1. The defendant's motion to amend his memorandum in support of his motion to vacate, set aside, or correct sentence, Doc. 125, and his "Motion to Amend Petitioner's Response Motion," Doc. 145, are **GRANTED**.

2. The Government's motion to dismiss, Doc. 138, is **GRANTED** and the defendant's motion to vacate, set aside, or correct sentence, Doc. 123, is **DENIED**. A separate judgment denying defendant's motion to vacate, set aside, or correct sentence will follow.

3. The defendant's motion for reduction of sentence, Doc. 130, is **GRANTED**.

4. A separate, shorter order reducing the defendant's sentence to 312 months will be entered.

This the 6th day of November, 2019.

UNITED STATES DISTRICT JUDGE

# Chronology of Events

## Kelby Benjamin 1:00-CR-00200-CCE

| Date | Docket Entry | Description |
| --- | --- | --- |
| June 26, 2000 | Doc. 1 | Information |
| August 7, 2000 | Doc. 6 | Plea Agreement Filed |
| | Doc. 7 | Order Setting Conditions of Release Pending Sentencing |
| January 5, 2001 | Entry | Defendant Failed to Appear for Sentencing |
| February 28, 2003 | Entry | Defendant Arrested |
| November 17, 2003 | Doc. 27 | Defendant's Position Paper |
| July 23, 2003 | Doc. 113 | PSR |
| March 29, 2004 | Doc. 46 | Transcript of Sentencing Hearing |
| April 15, 2004 | Doc. 41 | Judgment Sentencing Defendant to 360 Months Imprisonment |
| | Doc. 159 | SOR (2004)[16] |
| November 14, 2005 | Doc. 51 | Remanded for Sentencing in Light of *United States v. Booker* by Fourth Circuit |
| April 7, 2006 | Entry | Defendant Resentenced to 360 Months |
| | Doc. 69 | Transcript of Sentencing Hearing |
| | Doc. 110 | SOR (2006) |
| May 10, 2006 | Doc. 60 | Amended Judgment |
| May 14, 2007 | Doc. 71 | Resentencing Judgment affirmed by Fourth Circuit |
| July 29, 2010 | Doc. 73 | Pro Se § 3582 Motion re 2007 Retroactive Amendments |
| January 3, 2011 | Doc. 76 | Government's Position Paper |
| January 21, 2011 | Doc. 77 | Defendant's Position Paper |
| February 23, 2011 | Doc. 79 | Order Denying Motion re 2007 Amendment |

---

[16] The exact date on which the 2004 Statement of Reasons was approved is not documented.

| | | |
|---|---|---|
| July 6, 2011 | Doc. 85 | Mandate of Fourth Circuit Decision Dismissing Appeal Denying § 3582 Motion re 2007 Amendment |
| May 3, 2012 | Doc. 86 | Pro se § 3582 Motion re 2011 Retroactive Amendments |
| July 30, 2012 | Doc. 88 | Letter re "a motion for *Simmons v. United States*" |
| February 4, 2013 | Doc. 89 | Government's Position Paper |
| May 16, 2013 | Doc. 91 | Defendant's Position Paper |
| July 2, 2013 | Doc. 92 | Order Denying § 3582 Motion re 2011 Amendment (Doc. 86) |
| October 10, 2013 | Doc. 100 | Recommendation to Dismiss *Simmons* Letter Motion, Doc. 88, Without Prejudice so he can File on Correct Forms |
| November 20, 2013 | Doc. 102 | Judgment Dismissing Doc. 88 *Simmons* Motion |
| January 10, 2014 | Doc. 103 | Fourth Circuit Judgment Affirming Denial of § 3582 Motion re 2011 Amendment (Doc. 86) |
| November 19, 2015 | Doc. 106 | Pro se § 3582 Motion re 2014 Amendment |
| February 8, 2016 | Doc. 108 | Order Appointing Counsel |
| February 22, 2016 | Doc. 109 | Probation Memo |
| February 24, 2016 | Doc. 111 | Government's Position Paper |
| June 28, 2016 | Doc. 112 | Order Denying § 3582 Motion re 2014 Amendment |
| November 4, 2016 | Doc. 116 | Order Construing Defendant's Papers, Doc. 114; Doc. 115, as Motions to Reconsider and Denying them |
| November 3, 2017 | Doc. 120 | Fourth Circuit Opinion Affirming Denial of § 3582 Motion re 2014 Amendment (Doc. 106) |

| | | |
|---|---|---|
| November 5, 2018 | Doc. 123 | Defendant's § 2255 Motion (pending) |
| November 29, 2018 | Doc. 125 | Defendant's Motion to Amend Doc. 123 (pending) |
| January 22, 2019 | Doc. 130 | Defendant's First Step Act Motion (pending) |
| May 21, 2019 | Doc. 137 | Probation Memo re First Step Act Motion (Doc. 130) |
| May 22, 2019 | Doc. 138 | Government's Motion to Dismiss Defendant's § 2255 Motion (Doc. 123) (pending) |
| June 3, 2019 | Doc. 141 | Defendant's Response in Opposition to Government's Motion to Dismiss (Doc. 138) |
| June 17, 2019 | Doc. 143 | Defendant's Supplement to Doc. 141 |
| June 26, 2019 | Doc. 145 | Defendant's Motion to Amend Doc. 141 (pending) |
| July 15, 2019 | Doc. 148 | Government's Response to Doc. 145 |
| July 25, 2019 | Doc. 151 | Defendant's Reply re Doc. 145 |
| August 28, 2019 | Doc. 154 | Government's Response to First Step Act Motion (Doc. 130) |
| September 25, 2019 | Doc. 157 | Defendant's Reply to Government's Response (Doc. 154) |